IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Fernandez-Solano,  :
                Appellant  :
                                          :
              v.  :
                                            :
Commonwealth of Pennsylvania,  :
Department of Transportation,  : No. 1731 C.D. 2019
Bureau of Driver Licensing  : Submitted: May 29, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED:  August 21, 2020


          Jonathan Fernandez-Solano (Fernandez-Solano) appeals from the June 19, 2019 order of the Court of Common Pleas of Philadelphia County (trial court) affirming the 12-month suspension of his operating privilege by the Department of Transportation (Department), Bureau of Driver Licensing (Bureau), due to his refusal to submit to a chemical test.[1]  Upon review, we affirm.

          The Bureau notified Fernandez-Solano on February 15, 2017, that his operating privilege would be suspended for refusing to submit to a chemical test on January 30, 2017.  Licensee appealed the Bureau's decision to the trial court, which

---

[1] Section 1547(a) and (b) of the Vehicle Code, 75 Pa.C.S. § 1547(a) & (b), commonly referred to as the Pennsylvania Implied Consent Law, provides that the Department must suspend a licensee's operating privilege for a period of at least 12 months if he or she refuses to consent to a police officer's request to submit to chemical testing.  *See also Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 541 n.4 (Pa. 1996).

held a *de novo* hearing on the matter on June 19, 2019.  At the hearing, the Bureau presented the testimony of Philadelphia Police Officers Ruth Colon and Nicholas Polini.  The officers testified to the following events.

Before 5:00 a.m. on January 30, 2017, Officer Colon found Fernandez-Solano asleep in the driver's seat of his vehicle.  Reproduced Record (R.R.) 15a-16a.  The vehicle was in drive with the engine running, the lights were on, and the vehicle was facing the wrong direction on a one-way street.  *Id*. at 15a.  Fernandez-Solano awoke "confused" and "dazed" when Officer Colon tapped the window.  *Id*.  While Officer Colon was waking Fernandez-Solano, another officer entered the passenger side of the vehicle and placed the vehicle in park.  *Id*.  Officer Colon observed that Fernandez-Solano had red glassy eyes, slurred speech, smelled like alcohol, and his clothes were disheveled.  *Id*.  After Fernandez-Solano exited his vehicle he was not able to stand straight, was leaning on the vehicle, and required assistance to get into the officer's vehicle.  *Id*.  Officer Colon placed Fernandez-Solano under arrest for suspicion of driving under the influence pursuant to Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802,[2] and he was taken to the Police Detention Unit (PDU) for chemical testing.  R.R. at 16a.

When Fernandez-Solano arrived at the PDU, he was brought to Officer Polini, who performs chemical testing on persons suspected of driving under the influence.  *Id*.  Officer Polini read Fernandez-Solano the Implied Consent warnings, known as the refusal warnings, from the Department's DL-26 form.  *Id*.  Similar to

---

[2] Section 3802 prohibits driving under the influence of alcohol or a controlled substance. Of relevance here, Section 3802(a) provides that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."  75 Pa.C.S. § 3802(a).

2

Officer Colon, Officer Polini observed that Fernandez-Solano had "red, glassy, bloodshot eyes," an "unsteady gait," and an "odor of alcohol coming from his breath." *Id*. at 17a. After reading the warnings, Fernandez-Solano agreed to take a breath test. *Id*. Officer Polini provided Fernandez-Solano with instructions on how to give a breath sample and showed him how to give a proper sample using the mouthpiece. *Id*. For the test to work, Officer Polini explained that the subject must provide one continuous breath in the mouthpiece and "take a deep breath, hold it, and blow steadily" until he tells him to stop. *Id*. Officer Polini stated that he needs two accurate breath samples to complete the test. *Id*.

Officer Polini testified that a continuous breath is necessary for an accurate sample and Fernandez-Solano did not blow enough continuous air into the instrument for him to process the breath test. *Id*. Officer Polini stated that Fernandez-Solano "would begin to blow, and then he would stop." *Id*. Officer Polini was not able to obtain an accurate sample as reflected by the breath ticket printout, which indicated that an "insufficient sample [was] given." *Id*. at 18a; Original Record at 46. Officer Polini explained that the machine is checked for accuracy every day and the machine was functional when he administered Fernandez-Solano's test. R.R. at 18a. When the machine registered Fernandez-Solano's sample as insufficient, Officer Polini deemed it a "refusal" to submit to the breath test. *Id*.

Officer Polini further testified that at the time of testing, he did not inquire or know whether Fernandez-Solano suffered from any disease or medical condition that would have prevented him from giving a breath sample. *Id*. at 19a. Officer Polini did not ask Fernandez-Solano about his medical conditions prior to administering the test, but indicated that if Fernandez-Solano had disclosed to him a medical condition, he would have noted it. *Id*. Other than failing to give a sufficient

3

breath sample, Officer Polini stated that Fernandez-Solano was "cooperative and compliant." *Id.*

After the officers finished testifying, the trial court admitted into evidence the following documents: certified copies of the Department's operating privilege suspension, the Implied Consent warnings signed by Officers Colon and Polini, Fernandez-Solano's driving history, Fernandez-Solano's signed consent form to submit to the breath test, and the breath ticket printout indicating an insufficient sample was given. *Id.* Fernandez-Solano rested without testifying or presenting any additional evidence. *Id.*

Based on the foregoing, the trial court concluded that the Bureau met its burden of proof to support the operator license suspension. *Id.* The trial court explained that "there [were] reasonable grounds for the arrest," the "officers testified credibly," and "Officer Polini was not able to get a sufficient sample." *Id.* The trial court entered an order denying and dismissing Fernandez-Solano's appeal, and reinstating the suspension. Trial Court Order dated 6/19/19. Fernandez-Solano timely appealed the trial court's order to the Superior Court, which transferred the matter to this Court. *See* Superior Court Order dated 10/29/19. The trial court subsequently filed an opinion supporting its order. *See* Trial Court's Pa.R.A.P. 1925(a) Opinion dated 10/10/19.

Before this Court,[3] Fernandez-Solano contends that the trial court erred when it affirmed his operating privilege suspension because the Bureau did not

_____

[3] In cases involving an operating privilege suspension for refusal to take a breathalyzer test, this Court's review is limited to determining whether the trial court's findings are supported by competent evidence, whether an error of law has been committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Dep't of Transp., Bureau of Traffic Safety v. Korchak*, 483 A.2d 1360, 1362 (Pa. 1984). Questions of credibility and conflicts in evidence are for the trial court to resolve. *Id.*

4

present sufficient evidence to support a finding that he refused to submit to the breathalyzer test.[4] Fernandez-Solano's Brief at 9. To support a one-year suspension of an operating privilege, the Bureau must prove that the licensee (1) was arrested for driving under the influence in violation of 75 Pa.C.S. § 3802 by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of a vehicle while under the influence; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating privilege. *Dep't of Transp., Bureau of Driver Licensing v. Boucher*, 691 A.2d 450, 453 (Pa. 1997); *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once the Bureau's burden is met, the licensee then must show that he was "physically incapable of completing the breath test" or his refusal was "not knowing and conscious." *Martinovic*, 881 A.2d at 34.

Here, Fernandez-Solano argues that the Bureau failed to demonstrate that he unequivocally refused to submit to the breath test and that Officer Polini did not testify that he willfully attempted to subvert the test. That is not the standard for a refusal. To the contrary, "[i]t is well established that **anything other than an unqualified, unequivocal assent** to a chemical test constitutes a refusal." *Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1097 (Pa. Cmwlth. 2013) (quoting *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 951 (Pa. Cmwlth. 2011)) (emphasis added).

The trial court concluded that the Bureau presented sufficient evidence to support a finding that Fernandez-Solano "refused" the breath test because he did

---

[4] The issue of whether there was a refusal is a question of law reviewable by this Court. *Mueller v. Dep't of Transp., Bureau of Driver Licensing*, 657 A.2d 90, 92 (Pa. Cmwlth. 1995).

not "blow enough air into the instrument for [Officer Polini] to process the breath test." Trial Court's Opinion at 3, 5-7. Failure to supply a sufficient breath sample has repeatedly been deemed a refusal to submit to testing. *Boucher*, 691 A.2d at 454; *Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth. 2007); *Mueller v. Dep't of Transp., Bureau of Driver Licensing*, 657 A.2d 90, 94 (Pa. Cmwlth. 1995); *Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 468 A.2d 891, 892 (Pa. Cmwlth. 1983) (providing that a "refusal need not be expressed in words, but can be implied from a [licensee's] actions . . . [and] a [licensee's] failure to provide sufficient air to permit the test to be made is tantamount to a refusal . . . even where the [licensee] has expressed consent to the test"). Moreover,

> [a] refusal may be established where the breathalyzer administrator credibly testifies the licensee did not provide sufficient breath. Alternatively, [the Bureau] may establish a refusal by presenting a printout from a properly[-]calibrated breathalyzer indicating a 'deficient sample.'

*Giannopoulos*, 82 A.3d at 1097 (citing *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 766 (Pa. Cmwlth. 2008)).

The Bureau presented evidence of both in the present case. Officer Polini credibly testified as follows:

> Q. [Bureau counsel] Did [Fernandez-Solano] even begin to blow?
>
> A. [Officer Polini] He would begin to blow, and then he would stop.
>
> Q. You need what type of breath?
>
> A. I do not understand what --

Q. Are there intervals or is it continuous?

A. I need one continuous breath. That is why I advise them to take a deep breath, hold it, and blow steadily until I tell you [sic] to stop.

Q. On this occasion, what did [Fernandez-Solano] do?

A. He did not blow enough air into the instrument for me to process the breath test.

Q. How do you know that?

A. Because the instrument will tell me it is an insufficient sample.

Q. If you look at C-3, what is C-3?

A. A breath ticket that's printed out from the instrument.

Q. You are familiar with these tickets.

A. I am.

Q. Is this the ticket for this occasion for [Fernandez-Solano]?

A. It is.

R.R. at 17a-18a. Officer Polini explained that the breathalyzer used to administer Fernandez-Solano's test had been checked for accuracy and was operating properly on that day. *Id*. at 18a. The breath ticket produced by the breathalyzer, and admitted into evidence, shows that Fernandez-Solano failed to provide a sufficient breath sample. *See* Ex. C-3. Specifically, the breath ticket shows that Fernandez-Solano provided an "air blank" at 4:37 a.m., and an "air blank" at 4:38 a.m., and the samples were deemed insufficient at 4:42 a.m. *Id*.

Nevertheless, Fernandez-Solano contends that Officer Polini did not give him "sufficient time to complete the test," and submits that it was "Officer Polini's impatience" with him rather than Fernandez-Solano's "recalcitrance that caused the refusal." Fernandez-Solano's Brief at 9, 14, 15. There is no evidence in the record to support these assertions. To the contrary, Officer Polini explained to Fernandez-Solano how to take the test, showed him how to use the mouthpiece on the machine, and then administered the breath test. R.R. at 17a. Officer Polini testified:

> Q. [Bureau counsel] When you brought [Fernandez-Solano] [in] to take the breath test, what was your procedure on that day? What did you do? Did you provide any instructions?
>
> A. [Officer Polini] Yes. I have the same routine for every test I give. I actually show use of the mouthpiece and demonstrate how to properly give me a breath sample.
>
> Q. On this date with [Fernandez-Solano], and with other subjects, can you demonstrate what someone is supposed to do?
>
> A. I advise the subject to take a deep breath, and hold it and make a tight seal around the mouthpiece, and blow until I tell you to stop. I need to get enough air for it to process.
>
> Q. How many times does a subject have to blow?
>
> A. I need two accurate breath samples.
>
> Q. On this occasion, did you provide those instructions to [Fernandez-Solano]?
>
> A. Correct.

8

Q. What did he do with respect to the test?

A. He did not provide me with an accurate sample.

*Id.* Officer Polini stated that if someone is continuously breathing into the machine, it would be an accurate sample. *Id*. at 18a. Officer Polini further testified that he needed two samples and he would take the lower of the two to give the subject the "benefit of the doubt." *Id.*; *see also* 67 Pa. Code § 77.24(b)(1) (stating that the procedure for alcohol breath testing shall include "two consecutive actual breath tests, without a required waiting period between the two tests"); *Lucas v. Dep't of Transp., Bureau of Motor Vehicles*, 854 A.2d 639, 643 (Pa. Cmwlth. 2004) (explaining that a "test" as provided under the regulation is a breath sample, that is, the licensee must provide two breath samples).

Though Fernandez-Solano argues that he "made a good faith effort" to provide the sample before Officer Polini stopped the test," Fernandez-Solano's Brief at 14, a licensee's effort is not determinative. "[F]ailure to complete a breathalyzer test, **whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test**." *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (citing *Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, 593 A.2d 932 (Pa. Cmwlth. 1991)) (emphasis added); *see also Dep't of Transp. v. Berta*, 549 A.2d 262, 263-64 (Pa. Cmwlth. 1988). Though Officer Polini testified that Fernandez-Solano was "otherwise cooperative and compliant," this is not sufficient to excuse his failure to provide an adequate breath

9

sample at the time of testing. *See Giannopoulos*, 82 A.3d at 1097; *Kilrain*, 593 A.2d at 935.[5]

Lastly, Fernandez-Solano contends that the Bureau did not meet its burden of showing a refusal because Officer Polini did not ask him whether he suffered from a "medical condition that prevented him from completing the breathalyzer," or ascertain "whether his failure to perform the breathalyzer stemmed from a physical inability to perform the test." Fernandez-Solano's Brief at 9 & 12. Fernandez-Solano asserts that he was "physically incapable of participating [in] and completing a breathalyzer test," and his "inability" to provide sufficient breath stemmed from a physical condition. *Id*. at 13. However, the burden was not on Officer Polini to ascertain whether Fernandez-Solano had a medical condition at the time of testing.

"It is well settled that a licensee has a duty to inform the police officer of any known medical condition that is not obvious and may affect the licensee's ability to perform the requested chemical test." *Conrad v. Dep't of Transp., Bureau of Driver Licensing*, 226 A.3d 1045, 1054 (Pa. Cmwlth. 2020); *see also Mueller*, 657 A.2d at 94-95. Not only does the licensee have to inform the police officer of the medical condition at the time of testing, the licensee must also produce competent medical evidence of the condition to support a finding that the licensee

---

[5] While not specifically cited with respect to Fernandez-Solano's "good faith effort" argument, we note that this Court's decision in *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946 (Pa. Cmwlth. 2011), is distinguishable. In that case, the officer administering the breath test admitted that the licensee was polite and cooperative, consented to the breath test, was only provided *one* attempt to take the test and, after being told her breath sample was inadequate, she immediately asked to try again. The licensee in *Bomba* also testified on her own behalf, stating that she "messed up" because she was nervous and stressed due to being arrested, and the trial court found her to be credible. *Id.* at 950-51. Moreover, the licensee's request to take a second test in *Bomba* was made well within the two-hour window following her arrest, so there was no danger a second test would have produced an inaccurate result. Based on *those specific facts*, we determined that the licensee had not refused to consent to chemical testing.

10

was unable to take the test for medical reasons. *Id.* A simple declaration by a licensee that he is physically unable to perform a breath test, absent medical proof of his incapacity, will not justify his refusal to meet the statutory demands of his privilege. *Dep't of Transp., Bureau of Traffic Safety v. Kelly*, 335 A.2d 882, 885 (Pa. Cmwlth. 1975).

Here, the trial court observed that "[a]t no point before or during the testing, did [Fernandez-Solano] inform Officer Polini of any health conditions that would prevent him from providing an accurate breath sample." Trial Court's Opinion at 5. In addition, Fernandez-Solano decided **not** to present medical testimony before the trial court as to "whether or not he was incapable, through some physiological reason, of not [sic] giving a full sample." R.R. at 20a; *see Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504, 508 (Pa. Cmwlth. 1996) (providing that once the Bureau presents evidence that the licensee failed to provide a sufficient breath sample, refusal is presumed and the burden of proof shifts to the licensee to establish by competent medical evidence that he or she was physically unable to perform the test). Because Fernandez-Solano has not identified the medical condition that prevented him from providing a breath sample and opted not to present any medical evidence, he cannot meet his burden of showing that he was unable to take the breath test for medical reasons.

Based on the foregoing, we affirm the trial court's order denying and dismissing Fernandez-Solano's appeal and reinstating the suspension of his operating privilege.

_____
CHRISTINE FIZZANO CANNON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Fernandez-Solano,                    :
                 Appellant                    :
                           :
           v.                    :
                           :
Commonwealth of Pennsylvania,                 :
Department of Transportation,                 :   No. 1731 C.D. 2019
Bureau of Driver Licensing                    :

## O R D E R

AND NOW, this 21st day of August, 2020, the June 19, 2019 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge